UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KENNETH HILTON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>THE DOMINION GOLF GROUP GP, INC. d/b/a THE DOMINION GOLF GROUP and GOLF BRIDLEWOOD TEXAS LLC d/b/a BRIDLEWOOD GOLF CLUB | Case No. 1:18-cv-00495<br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Kenneth Hilton brings this lawsuit to recover unpaid overtime wages and other damages from The Dominion Golf Group GP, Inc. d/b/a The Dominion Golf Group ("Dominion Golf") and Golf Bridlewood Texas LLC d/b/a/ Bridlewood Golf Club ("Bridlewood Golf") under the Fair Labor Standards Act (FLSA).

2. Hilton works at the Bridlewood Golf Club (the "Bridlewood Club"), a private golf club in Flower Mound, Texas.

3. The Bridlewood Club was owned and operated by Dominion Golf before being sold to Golf Bridlewood. It is now owned and operated by Bridlewood Golf.

4. Hilton and the other workers like him regularly worked for Dominion Golf in excess of 40 hours each week, but these workers never received proper overtime for hours worked in excess of 40 hours in a single workweek.

5. While it owned the Bridlewood Club, Dominion Golf paid Hilton at two different rates—one hourly rate for working in the pro shop and another, higher rate for giving lessons.

6. But Dominion Golf paid Hilton's overtime based only on the lower rate without accounting for the higher overtime rate Hilton should have received. Hilton's overtime was therefore paid at an artificially low regular rate. 29 U.S.C. 207(e).

7. Once the Bridlewood Club was sold to Bridlewood Golf, Hilton and other golf instructors were converted to independent contractor status for only some of their pay and job duties at the Bridlewood Club.

8. Instead of paying overtime as required by the FLSA, Bridlewood Golf improperly classified Hilton and the other instructors as independent contractors when performing some of their job duties and then as employees when performing other job duties.

9. Bridlewood Golf did this in order to avoid the FLSA's overtime requirements.

10. This collective action seeks to recover the unpaid wages and other damages owed to Hilton and other workers like him who worked for Dominion Golf, but were not paid their full overtime wages.

11. Hilton also seeks to recover unpaid wages and other damages due to his misclassification by Bridlewood Golf, and Bridlewood Golf's failure to pay Hilton his proper overtime wages.

12. To add insult to injury, after Hilton complained about Bridlewood Golf's not paying his overtime and misclassification, Bridlewood Golf began retaliating against him by cutting his pay and hours, excluding him from company events and bonuses, and other forms of retaliation.

13. Bridlewood Golf's actions toward Hilton for complaining about overtime pay violate the anti-retaliation provisions of the FLSA.

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Dominion Golf maintains its principle office in this District and Division.

## THE PARTIES

16. Hilton began working at the Bridlewood Club in April 2012.

17. As of today, Hilton still works for Bridlewood Golf at the Bridlewood Club.

18. Hilton worked for Dominion Golf as a golf instructor.

19. Hilton also worked for Dominion Golf in the pro shop and did other work for them.

20. Hilton works for Bridlewood Golf as a golf instructor.

21. Hilton also works for Bridlewood Golf in the pro shop and does other work for them.

22. When working as a golf instructor (for Dominion Golf or Bridlewood Golf), Hilton is paid on a piecemeal basis, no matter how much time the lesson takes.

23. But when working in the pro shop (for Dominion Golf or Bridlewood Golf), Hilton is paid by the hour.

24. Dominion Golf owns and/or operates several golf courses throughout Texas.

25. Golf instructors work at all of Dominion Golf's courses.

26. While Dominion Golf owned and operated the Bridlewood Club, although Hilton regularly worked over 40 hours in a week, Dominion Golf did not pay Hilton overtime based on the required regular rate.

27. Since Bridlewood Golf took over the ownership of the Bridlewood Club, Bridlewood Golf calls Hilton an independent contractor when working as a golf instructor.

28. But when Hilton works for Bridlewood Golf in the pro shop, Bridlewood Golf calls Hilton an employee.

29. Bridlewood Golf wants it both ways, so it can avoid paying Hilton overtime.

30. Hilton's written consent is attached as Exhibit A.

31. Hilton brings this action on behalf of himself and all other similarly situated employees under § 16(b) of the FLSA. See 29 U.S.C. § 216(b).

32. Hilton represents at least one class of similarly situated coworkers.

> **Golf course workers for The Dominion Golf Group during the last three years who were paid an hourly rate, but whose overtime compensation rate (if any) did not take into account additional, non-discretionary compensation.**

33. Putative class members include, but are not necessarily limited to, golf course instructors at Dominion Golf's clubs.

34. Putative class members were subjected to the same unlawful regular rate policy as Hilton.

35. The members of the FLSA Class are easily ascertainable from Dominion Golf's business records, particularly its personnel records.

36. Bridlewood Golf is a Texas limited liability company with its headquarters and principal place of business in Denton County, Texas. It may be served by serving its registered agent for service of process: **Larry L. Galloway, 1607 Nelson Dr., Irving, TX 75038**.

37. Dominion Golf is a Texas corporation with its headquarters and principal place of business in Travis County, Texas. It may be served by serving its registered agent for service of process: **Steven Held, 2510 Onion Creek Pkwy., Austin, TX 78747**.

## COVERAGE UNDER THE FLSA

38. Dominion Golf was an employer of Hilton within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. Dominion Golf was an employer of the potential class members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40. Dominion Golf was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

41. Dominion Golf was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1). Dominion Golf employs many workers who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

42. Bridlewood Golf was an employer of Hilton within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

43. Bridlewood Golf was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

44. Bridlewood Golf was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1). Bridlewood Golf employs many workers who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

45. Bridlewood Golf treated Hilton as an employee and uniformly dictated the pay practices to which Hilton was subjected.

46. Bridlewood's misclassification of Hilton as an independent contractor does not alter his status as an employee for purposes of this FLSA action.

## FACTS

47. The Bridlewood Club is a golf club located in Flower Mound, Texas.

48. The Bridlewood Club was owned and operated by Dominion Golf at all relevant times until July 2017.

49. In July 2017, the Bridlewood Club was sold by Dominion Golf to Bridlewood Golf.

50. Bridlewood Golf now owns and operates the Bridlewood Club.

51. The Bridlewood Club employs golf course workers, like Hilton, that provide golf lessons to the Bridlewood Club's members and customers.

52. The Bridlewood Club's golf course workers also staff its pro shop.

53. While Dominion Golf owned and operated the Bridlewood Club, golf course instructors were paid by the lesson when performing golf instruction.

54. Dominion Golf paid these same employees by the hour when performing non-instruction work, such as working in the pro shop.

55. Hilton is one of the golf course workers paid at these two different rates.

56. However, when Hilton worked more than 40 hours in a week, Hilton's overtime rate was paid based on only his lower, hourly rate, without accounting for the amounts Hilton was paid for instruction.

57. Numerous other golf course workers at the Bridlewood Club and Dominion Golf's other courses were paid by Dominion Golf in the same manner as Hilton.

58. Hilton performed hands-on work as a golf course worker.

59. All the potential class members performed the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

60. However, variations, if any, in the potential class members' job duties do not impact their entitlement to overtime under the FLSA.

61. The potential class members were non-exempt employees.

62. The potential class members often worked in excess of 40 hours in a single week.

63. Dominion Golf knew that Hilton and potential class members often worked more than 40 hours in a single week.

64. Dominion Golf knew Hilton and the potential class members were not exempt from the FLSA's overtime provisions.

65. However, Dominion Golf did not pay the Independent Class Members overtime for all hours worked over 40 hours in a workweek.

66. In July 2017, the Bridlewood Club was sold by Dominion Golf to Bridlewood Golf.

67. Once it took over the Bridlewood Club, Bridlewood Golf converted certain golf course workers, including golf course workers like Hilton, to independent contractors.

68. These golf course workers are classified by Bridlewood Golf as employees for the work they perform in the pro shop.

69. Yet the same golf course workers are classified by Bridlewood Golf as independent contractors when they provide golf lessons.

70. The work Hilton performed was an essential part of Bridlewood Golf's core business.

71. During Hilton's employment with Bridlewood Golf, Bridlewood Golf exercised control over all aspects of his job.

72. Hilton's job did not require any substantial investment by Hilton in order for him to perform the work required of him.

73. Bridlewood Golf invested in the land, buildings, facilities, and equipment used by Hilton in connection with his job duties.

74. Bridlewood Golf set the hours worked by Hilton.

75. Bridlewood Golf set the rate charged for Hilton's services as a golf instructor.

76. Therefore, Bridlewood Golf determined Hilton's opportunity for profit and loss.

77. Bridlewood Golf members and customers who received training from Hilton made payment to Bridlewood.

78. Hilton performed golf work exclusively for Bridlewood Golf while he worked there.

79. Bridlewood Golf controlled all the significant or meaningful aspects of the job duties performed by Hilton.

80. Hilton did not incur operating expenses like rent, payroll, marketing, and insurance.

81. Hilton was economically dependent on Bridlewood Golf during his employment.

82. No formal education was required of Hilton to perform his job duties.

83. Hilton often worked for Bridlewood Golf in excess of 40 hours in a single week.

84. Bridlewood Golf knew that Hilton often worked more than 40 hours in a single week.

85. Bridlewood Golf knew Hilton was not exempt from the FLSA's overtime provisions.

86. However, Bridlewood Golf did not pay Hilton overtime for all hours worked over 40 hours in a workweek.

87. After he was converted to an independent contractor by Bridlewood Golf, Hilton complained to management and supervisors regarding his lack of overtime pay and status as an independent contractor.

88. Shortly thereafter, Hilton was intimidated by managers and supervisors.

89. Hilton's hours and pay were cut.

90. Bridlewood Golf began to exclude Hilton from bonuses and promotions offered to other employees.

91. Hilton has not been allowed to perform golf instruction for Bridlewood Club patrons.

92. Bridlewood Golf has created an unwelcome and hostile work environment for Hilton as a direct result of his questioning his classification as an independent contractor and raising concerns about his overtime pay.

93. Employers should not, and may not, retaliate against an employee such as Hilton because he reports, raises concerns, or files a claim for fair pay. 29 U.S.C. § 215(a)(3).

## COLLECTIVE ACTION ALLEGATIONS

94. Hilton incorporates all preceding paragraphs and alleges that the illegal pay practices Dominion Golf imposed on Hilton were likewise imposed on the Putative Class Members.

95. Dominion Golf employs other golf course workers that performed similar job duties to Hilton, worked similar hours, and were also subject to Dominion Golf's policy of failing to pay overtime based on the full compensation paid to employees.

96. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

97. Based on his experiences and tenure with Dominion Golf, Hilton is aware that Dominion Golf's illegal practices were imposed on the Putative Class Members.

98. Dominion Golf's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

**First Cause of Action as to Dominion Golf—
Overtime Violations of the FLSA**

99. Hilton incorporates all preceding paragraphs by reference.

100. By failing to pay Hilton and the other Putative Class Members overtime at 1.5 times their regular rates, Dominion Golf violated the FLSA. 29 U.S.C. § 207(a).

101. Dominion Golf owes Hilton and the other Putative Class Members the difference between the rate actually paid and the proper overtime rate.

102. Because Dominion Golf knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Dominion Golf owes these wages for at least the past three years.

103. Dominion Golf also owes Hilton and the other Putative Class Members an amount equal to the unpaid overtime wages as liquidated damages.

104. Hilton and the other Putative Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

**First Cause of Action as to Bridlewood Golf—
Overtime Violations of the FLSA**

105. Hilton incorporates all preceding paragraphs by reference.

106. By failing to pay Hilton overtime at 1.5 times his regular rate, Bridlewood Golf violated the FLSA. 29 U.S.C. § 207(a).

107. Bridlewood Golf owes Hilton the difference between the rate actually paid and the proper overtime rate.

108. Because Bridlewood Golf knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Bridlewood Golf owes Hilton these wages for at least the past three years.

109. Bridlewood also owes Hilton an amount equal to the unpaid overtime wages as liquidated damages.

110. Hilton is entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### SECOND CAUSE OF ACTION AS TO BRIDLEWOOD GOLF— UNLAWFUL RETALIATION UNDER THE FLSA

111. Hilton incorporates all preceding paragraphs by reference.

112. At all relevant times, Bridlewood Golf has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

113. The FLSA provides a cause of action for unlawful retaliation for an employer who discriminates in any way against or who discharges an employee for exercising the employee's legal rights under the FLSA. 29 U.S.C. §§ 215(a)(3), 216(b).

114. Bridlewood Golf employed Hilton.

115. Bridlewood Golf retaliated against Hilton for complaining about his overtime pay.

116. Bridlewood Golf intentionally discriminated against Hilton, subjecting him to unfair and illegal treatment.

117. Bridlewood Golf knew, or showed reckless disregard for whether, its actions in discriminating against Hilton were in violation of the FLSA.

118. Bridlewood Golf's retaliatory discrimination have caused Hilton to suffer damages, including liquidated damages, lost wages, emotional distress, punitive damages, attorneys' fees, and costs and expenses of suit.

### JURY DEMAND

119. Hilton demands a trial by jury.

### RELIEF SOUGHT

120. Wherefore, Hilton prays for judgment against Dominion Golf and Bridlewood Golf as follows:

(a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b) For an order finding Dominion Golf liable for violations of state and federal wage laws with respect to Hilton and all Putative Class Members covered by this case;

(c) For an order finding Bridlewood Golf liable for violations of state and federal wage laws with respect to Hilton;

(d) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Hilton and all Putative Class Members covered by this case;

(e) For a declaration that Bridlewood Golf violated the FLSA by retaliating against Hilton;

(f) For a judgment against Bridlewood Golf awarding Hilton all liquidated damages, lost wages, emotional distress, and punitive damages related to his retaliation claim;

(g) For a judgment awarding Hilton and all Putative Class Members covered by this case their costs of this action;

(h) For a judgment awarding Hilton and all Putative Class Members covered by this case their attorneys' fees;

(i) For a judgment awarding Hilton and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(j) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
Texas Bar # 24069719
**PARMET HEDGPETH LLP**
800 Sawyer St.
Houston, Texas 77007
p 832 324 5253
matt@parmethedgpeth.com

**Attorneys for Plaintiff**